# DAVIS-WATKINS MANUFACTURING COMPANY v. NASHVILLE PURE MILK COMPANY.

Middle Section.   June 7, 1926.

No petition for Certiorari was filed.

1. **Evidence.** Burden is on defendant to prove allegations of its cross-bill.
    In an action to recover the purchase price of a tank where defendant filed a cross-bill alleging that the material and workmanship of the tank were inferior and poor and in violation of complainant's written guaranty, held that burden is on defendant to prove such allegations.

2. **Appeal and error.** Evidence that tank did not do work it was warranted to do with no showing that defendant mistreated the tank is sufficient to sustain defendant's case that tank was not of quality warranted.
    In an action to recover for the purchase price of a glass-lined milk tank where the evidence showed that the tank should have lasted for a period

of eight or ten years but that in three or four months it warped and cracked until it was useless and there was no evidence in the record to show that the tank was mistreated by the defendant, held that it must be assumed that the tank was not of the quality warranted and the evidence was sufficient to sustain a verdict for the defendant.

3. Sales. Warranty. Proof of an express warranty is not essential where evidence showed that seller was advised of the purpose for which the article was to be used and the defendant knew nothing about the article.

In an action to recover for a milk tank where the evidence showed that defendant advised plaintiff of the purpose for which the tank was to be used and further advised him that he knew nothing about such tanks and would rely upon the seller to determine whether or not it would serve the purpose for which it was desired by the defendant, held that the defendant would not have to show an express warranty to defeat plaintiff's action and recover on its counterclaim.

4. Appeal and error. Party cannot raise on appeal a matter which it has admitted by its pleading.

Where a party admits by its pleading a certain fact, that fact cannot be questioned on appeal.

5. Words and phrases. "Duly installed" defined.

"Duly," according to Webster's International Dictionary, means "in a due, fit, or becoming manner; as it ought to be; properly; regularly." Hence "duly installed" means properly and regularly installed.

Appeal from Chancery Court, Davidson County; Hon. James B. Newman, Chancellor.

Affirmed.

W. B. Marr and Roy A. Miles, of Nashville, for appellant.

Thos. W. Schlater, Jr., and Edwin A. Price, of Nashville, for appellee.

FAW, P. J.   This case was tried in the chancery court of Davidson county, Part II, on the original bill of complainant Davis-Watkins Manufacturing Company, the answer of the defendant Nashville Pure Milk Company filed as a cross-bill against the original complainant, the answer of the Davis-Watkins Manufacturing Company to said cross-bill, and proof, in the form of depositions and exhibits thereto, filed by both parties.   By decree entered June 4, 1925, the chancellor dismissed the original bill of the Davis-Watkins Manufacturing Company at its cost, and granted the Nashville Pure Milk Company a recovery of $603.74 and costs against the cross-defendant Davis-Watkins Manufacturing Company, for which execution was awarded.   The Davis-Watkins Manufacturing Company prayed an appeal to this court, which was granted upon the execution of bond by complainant as required by law.   Complainant did not execute an appeal bond and this court did not acquire jurisdiction under the appeal.   Subsequently, however, the Davis-Watkins Manufacturing Company obtained a fiat from a member of this court for writs of error and supersedeas, and upon

the execution of proper bonds, the record was filed in this court and the case has been heard and submitted to the court upon assignments of error and brief on behalf of the complainant Davis-Watkins Manufacturing Company, reply brief on behalf of defendant Nashville Pure Milk Company, oral argument of counsel for both parties at the bar and the transcript of the record in the cause.

In the original bill, filed February 13, 1924, the Davis-Watkins Manufacturing Company, a corporation organized under the laws of the State of Delaware, alleges that the defendant Nashville Pure' Milk Company, a corporation organized under the laws of the State of Tennessee with its principal place of business at Nashville, Tennessee, is indebted to complainant by a promissory note in the sum of $514.73, dated April 31, 1923, at Nashville, Tennessee, and due August 3, 1923, with six per cent interest, which note (it is stated in the bill) is filed as Exhibit "A" to and as a part of the bill. It is further alleged in the bill that said note was executed and delivered to complainant for a valuable consideration on the date aforesaid and bearing interest at the rate of six per cent per annum from date, all of which is due, owing and unpaid. Complainant prayed for a decree against defendant for the amount due on said note, with interest, etc.

In its answer, filed March 4, 1924, defendant Nashville Pure Milk Company did not deny the execution of the note described in complainant's bill but, in paragraph I of its answer, defendant denied that said note was executed and delivered to the complainant for a valuable consideration, and denied that it was indebted to the complainant on said note, or on any other account, in the sum of $514.-73 with interest, or in any sum whatsoever, and alleged that complainant is indebted to defendant in the amount and under the conditions set forth later in its answer.

In paragraph II of its answer, defendant further avers that in the early part of December, 1922, it agreed to purchase from the complainant, through G. B. Woodard, Jr., the local agent and representative of the complainant, one Jacketed Glass Lined Holding Tank (which is described in detail in the answer) guaranteed not to chip or crack, which order was duly acknowledged and accepted by the complainant by written acknowledgment dated December 16, 1922; that in pursuance of said order said tank was shipped to the defendant on March 31, 1923, and was duly and regularly installed in the early part of April, 1923; that said tank was carefully and properly used by the defendant for the purpose of ripening cream, preliminary to butter making, for which use it was sold by the complainant and purchased by the defendant, and for which use complainant knew it would be used, until the early part of July, 1923, at which time the glass coating on the inner surface be-

gan to chip and scale off, thereby rendering said tank unfit and unsafe for the uses and purposes for which it was sold by complainant and bought by defendant, and that these facts were duly and promptly called to the attention of the complainant by the defendant in July, 1923.

In paragraph III of its answer, the defendant further avers that said tank was sold under a written guaranty that it was of proper material, workmanship and construction, and that it was suited for the purposes and objects for which the defendants used it, namely, the ripening of cream, preliminary to butter making; that said tank should have lasted for about ten years, if it had been of proper material and workmanship and construction, instead of only three months; that said tank did not come up to the specifications and contract of the complainant, in that, the glass coating on the inner surface of said tank was defective, and chipped and scaled off, and, in that, the materials and workmanship of said tank were inferior and poor, in utter and positive violation of the complainant's written guaranty and representations upon which the defendant relied and because of which the defendant agreed to purchase said tank.

Defendant states further, in paragraph III of its answer, that it paid to the complainants for said tank on April 7, 1923, sight draft of $490.23, and on April 3 executed note for the balance of $514.73, due August 3, 1924 (1923), bearing interest at six per cent and being the note sued on in this case.

It is further alleged in parapraph III of defendant's answer that, in the latter part of August or the early part of September, 1923, after its notification to the complainant that said tank was defective and unsatisfactory, said tank was shipped according to the written instructions of complainant to the Glascote Company of Euclid, Ohio, for rebuilding at the expense of complainant; that complainant subsequently refused to rebuild or repair said tank and failed to return said tank to defendant and has same in its possession, or in possession of its agents, now; that, because of the breach of said contract, warranties and representations by complainant as hereinbefore set forth, defendant is not indebted to complainant in the sum of $514.73, or any sum whatsoever, but, because of said breach as aforesaid, defendant is entitled to a recovery from complainant of the sum of $490.23, the initial amount paid for said tank, together with all freight charges, costs of installing said tank, and other damages caused by the aforesaid breach of warranty etc. by complainant, amounting to $200.

The defendant assumed the character of a cross-complainant and, upon the averments of its aforesaid answer, prayed for a decree against the cross-defendant Davis-Watkins Manufacturing Com-

pany for the sum of $690.23, with interest and costs, and for general relief.

The original complainant answered the cross-bill of the defendant Nashville Pure Milk Company and denied that it is indebted to defendant as alleged in paragraph I of its answer and cross-bill.

Complainant, as cross-defendant, admitted that it entered into a contract with defendant for the sale of one tank as described in paragraph II of complainant's bill, and complainant stated that said contract of sale would be produced and filed on or before the hearing, to which contract complainant made reference for the particulars concerning same. Complainant further admitted that said tank was "duly installed at defendant's plant," but denied that it was carefully and properly used by defendant. Complainant also admitted that it received correspondence from defendant to the effect that the tank was defective.

Complainant denied the allegation in paragraph III of defendant's answer and cross-bill with reference to written guaranty, and denied the allegation in said paragraph III with reference to the duration of said tank, and complainant denied that said tank did not come up to the specifications and contract as alleged in paragraph III of defendant's answer and cross-bill. Complainant stated that it would show that it had complied in every respect with its part of the contract, insofar as such compliance was made possible by defendant, and complainant averred that said tank fully complied with all specifications embraced in said contract.

Complainant admitted that it received in payment for the aforesaid tank $490.23 by sight draft on April 27, 1923, in addition to the note of $514.17 on which it is suing in this case. Defendant also admitted that said tank was shipped by defendant, at the suggestion of complainant, to the Glascote Company, of Euclid, Ohio, for repairs, but complainant alleged that said repairs were not made because "impractical, in view of the manner in which the said tank had been used and abused by defendant." Complainant further alleged, in its answer to the cross-bill, that, by reason of said abuse and misuse, the said tank was in such a condition that it would cost more to repair same than it would to purchase a new one. Complainant admitted that it refused to rebuild said tank and did not return same to defendant, but complainant averred that its said refusal and failure was made because said tank had been misused, abused and improperly operated, and that the tank was not defective.

Complainant denied that it was guilty of any breach of said contract, or of any alleged warranties or representations, and denied that it is indebted to defendant in the sum of $490.23, plus freight charges, cost of installation and other damages amounting to $200,

and denied that it is indebted to defendant in any sum whatever; and complainant denied generally all allegations of defendant's cross-bill which it had not specifically and particularly answered.

The learned Chancellor did not file a written opinion and finding separate from his decree entered on the minutes, but his findings of fact are embodied in the decree, and in order that the scope of the single assignment of error filed in this court, and the issue or issues thereby presented for decision here, may be more clearly seen, we copy herein the final decree of the chancery court, which is as follows:

"This cause came on to be finally heard this June 4, 1925, before Honorable James B. Newman, Chancellor, etc., upon the entire record and argument of counsel, from all of which the court finds the following controlling and determinative facts:

That H. G. Davis, was sales-manager and Geo. B. Woodard, Jr., was the local agent of the complainant in the city of Nashville; that sometime in the latter part of 1922, complainant and defendant entered into a contract for the sale and purchase of a glass-coated or lined tank, of the capacity of 625 gallons, for refining cream, preliminary to making it into butter; that this contract was in writing and executed December 20, 1922; that the terms of purchase were $489.74 cash and a note for $514.73, which was executed April 3, 1923, payable four months after date; that the aforesaid agents of the complainant inspected the place where the tank was to be installed, and caused to be prepared and furnished to the defendant a blue-print of said tank for its installation; that said tank was installed in accordance with the blue-print and the directions of complainant's said agents; that said contract entered into between the parties guaranteed the tank not to chip or crack and to be of good material and workmanship, and when properly installed, to give satisfactory service; that the tank was installed in defendant's place of business in April, 1923 and in July, 1923, its defective condition became apparent by the glass coating becoming chipped or cracked, and the tank warped so as to become practically useless in defendant's business; thereupon, in August, 1923, the defendant, at the instance of complainant, shipped the tank back to the manufacturer for repairs and it has never been returned to it, or repaired; that in addition to the $489.74 paid by defendant to complainant, defendant expended for drayage, crating and freight the additional sum of $72; that the cross-bill in this cause setting up the defective condition of this tank and seeking to recover the amount paid was filed March 4, 1924; that the allegations of the original bill are met and denied by the answer, and not sustained by the proof, and that complainant is not entitled to a judgment on the note sued on of $514.73; that the allegations of the

cross-bill are sustained by the proof and the cross-complainant is entitled to relief:

It is therefore ordered, adjudged and decreed by the court:

(1)   That the original bill be, and is dismissed, and the complainant and its surety taxed with the costs, for which let execution issue.

(2)   That the cross-complainant, Nashville Pure Milk Company, have and recover of the cross-defendant, Davis-Watkins Mfg. Co., the sum of $561.74, with interest from March 4, 1924, amounting to $42, together aggregating $603.74, and the costs of the cross bill, for which let an execution issue.

To the foregoing action of the court, complainant excepts and prays an appeal to the present term of the Court of Civil Appeals, sitting at Nashville, which is by the court granted, upon its executing bond as required by law.''

The sole assignment of error filed by complainant in this court is as follows:

''The chancellor erred in finding that the allegations of the original bill are met and denied by the answer and not sustained by the proof and that complainant is not entitled to a judgment on the note sued on of $514.73; that the allegations of the cross-bill are sustained by the proof and the cross-complainant is entitled to relief.

Defendants' cross-bill alleges that the materials and workmanship of said tank were inferior and poor, in violation of the complainants' written guaranty. Complainants deny this and challenge defendant to show from anywhere in the proof that said workmanship and material were defective. The burden is on the defendant to prove these allegations and complainant contends and insists that this they have failed to do. It is true that the proof shows in abundance that the tank did not do the work for which ti was bought, but nowhere is it shown why it did not do the work. It is left for the court to suppose that it failed to perform properly because of defective workmanship and material, but it certainly is not proven.''

Counsel for defendant Milk Company, in their reply brief, first insist that complainant's assignment of error is too general, broad and indefinite to constitute a good assignment of error under sections 1 and 2 of the 11th Rule of this court; but the aforesaid criticism of the assignment of error is followed by a vigorous brief and written argument in support of the proposition that there is ''no merit in the appellant's assignment,'' and defendant's brief and argument discloses a clear comprehension on the part of defendant's counsel of the specific question to which it was intended to direct complainant's assignment of error.

It is true that the assignment of error, supra, particularly the first paragraph thereof, is not very specific or perspicuous, but when the decree is examined, in the light of the pleadings and proof, it is apparent, we think, that the form of the assignment was induced by the form of the decree. That is to say: the specific findings of fact in the decree do not embody a finding upon the ultimate determinative issue of fact arising out of the pleadings and proof. The complainant did not attempt to dispute by its proof, and its witnesses admitted, the evidence introduced by defendant which showed clearly that the tank in question became warped and the glass coating thereof chipped or cracked, and as a result of these defects the tank became practically useless to defendant for the purpose for which the tank was sold by complainant and bought by defendant; that this occurred approximately within three months after the tank was received and installed in defendant's plant; that, pursuant to the request and instructions of complainant, defendant returned the tank to the Glascote Company (the manufacturer) for repairs, but that the tank was not repaired or returned to defendant—the Glascote Company and the complainant Company stating that it was impossible to repair the tank for a less cost than would be required to purchase a new tank. It was the contention of the complainant below, and it is its contention in this court, that the defective condition of the tank, when returned to the Glascote Company by defendant, did not result from defective materials or workmanship or defects of any character in the tank, or the manner of its construction, existing at the time the tank was delivered to the defendant and installed in its plant, but that the failure of the tank to serve the purpose for which it was installed and its defective condition when returned to the Glascote Company were the result of improper operation and treatment of the tank by the defendant. Upon this issue the chancellor made no specific findings; but his finding that "the allegations of the cross-bill are sustained by the proof and the cross-complainant is entitled to relief" necessarily includes a finding that the defective condition of the tank and its failure to serve the purpose for which it was intended did not result from the fault of the defendant but from defects in the original construction of the tank which constituted a breach of the warranty (either express or implied) upon which complainant sold the tank to the defendant. This issue was distinctly raised by the cross-bill and the answer thereto, and it is the only material issue raised by the assignment of error in this court.

The assignment of error does not challenge any of the findings which we have heretofore denominated as the specific findings of the chancellor in his decree. Moreover, after a careful examination of

the record we are satisfied that the proof fully sustains each and all of the specific findings of the chancellor.

However, if all of the Chancellor's specific findings be correct and it should nevertheless appear that the defects which became apparent in the tank after it was used for about three months by the defendant resulted from the fault of the defendant in the manner in which it handled and operated the tank the decree of the Chancellor is erroneous. But we find no sufficient support in the evidence for the conclusion that the defendant was responsible for the defective condition of the tank.

The complainant offered no evidence which tended to prove improper operation, misuse or abuse of the tank by the defendant, except testimony of George Higley, superintendent of the Glascote factory at Euclid, Ohio. The tank in question was manufactured by the Glascote Company and, at the instance of the complainant, the defendant returned it to the Glascote Company. Mr. Higley testified that when the tank was returned to the Glascote Company it was "beyond repair." He stated that the condition of the tank showed that it had been subjected to excessive pressure from the brine which circulated (and which was intended to circulate) between the outer and inner jackets of the tank. No other theory than that just mentioned is suggested by the complainant's evidence as the cause of the warping of the tank and the chipping or cracking of the glass coating. The complainant's proof is, however, to the effect that it would require a pressure of fifty pounds to a square inch to injure the tank, and that the tank would easily withstand a pressure of twenty pounds.

The defendant proved by its Chief Engineer, J. H. Dickerson (who had held that position with defendant for nine years), that the tank had never been subjected, while in defendant's plant, to a pressure of more than twenty pounds, and that the ordinary pressure was fifteen pounds. Defendant also proved by Mr. Dickerson and other witnesses familiar with the construction and operation of defendant's plant (including John E. Bouchard, an expert with twenty-five years experience in the-building and installation of dairy equipments and refrigerating equipments and who had built defendant's plant), that defendant's plant was so constructed, with reference to the circulation of brine, that it was not possible for the tank in question to have been subjected to a pressure of more than twenty pounds. We deem it unnecessary to extend this opinion by making a detailed statement of the proof on this point. The great weight of the proof shows that the defective condition of the tank was not the result of the manner in which the tank was treated and handled by the defendant, and we so find. This finding answers

the only question raised by complainant's assignment of error, and said assignment is overruled.

There was some controversy in the court below and there is some controversy in the briefs in this court as to the exact character and extent of the warranty made by complainant to defendant at the time complainant sold the tank to defendant. This controversy resulted from the fact that the original order, which contained the terms of the warranty, was lost by the complainant and the original was never introduced into the record, although the complainant introduced in the evidence a purported copy which was made, not from the original, but from a record kept on the books of the complainant. However, it is clearly shown by the proof that the tank was guaranteed not to chip or crack, that is, that the glass coating or lining inside of the tank would not chip or crack, and it is further shown by the undisputed proof that the glass coating or lining cracked and chipped off to such an extent as to render the tank absolutely useless for the purpose for which it was intended,.namely, "ripening cream."

However, proof of an express warranty is not essential to recovery in favor of defendant Milk Company in this case. The undisputed proof shows that the complainant was fully informed of the particular purpose for which the tank was desired by defendant, and for which it would be used if bought by defendant, and that complainant's salesmen were advised by defendant's representative that he knew nothing about such glass lined tanks and would rely upon them to determine whether or not it would serve the purpose for which it was desired by defendant. It further appears that the purchase was not made until the representatives of complainant had made a careful examination of defendant's plant, machinery and equipment, and had advised defendant that the tank would suit defendant's purposes, and had made blue-prints showing the manner in which the tank could be connected with defendant's machinery and equipment.

It is provided by the Uniform Sales Act (chapter 118, Public Acts of 1919), section 15, subsection 1, that "where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose."

And subsection 6 of the same section provides that "an express warranty or condition does not negative a warranty or condition implied under this Act, unless inconsistent therewith."

In its brief, complainant also seeks to make the question that the defendant did not afford the complainant an opportunity to furnish

a competent mechanic to install the tank, as provided by the contract between the parties, and that defendant thereby breached its contract and cannot now be heard to say that the tank was properly installed. The provisions of the written contract (as shown by the purported copy introduced by complainant) is in these words:

"When informed by seller of their need, purchaser will promptly furnish power and all connection for and with power, for milk, heat, steam, water and sewer to said machinery and all fittings, appliances, attachments, structures and preparations necessary to erect, set and operate said machinery, at purchaser's cost; and when such are ready, purchaser will employ, when needed a mechanic designated by the seller, to direct the erection of said machinery, at $12 per eight-hour day, and travelling and living expenses, payable to said mechanic weekly."

Complainant is precluded from making the question thus sought to be raised (1) by an express admission in its answer to the crossbill that "said tank was duly installed at defendant's plant," and (2) by a failure to raise this question through its assignment of error.

"Duly," according to Webster's International Dictionary, means "in a due, fit, or becoming manner; as it ought to be; properly; regularly." Hence "duly installed" means properly and regularly installed.

We find no error in the decree of the chancellor and it is in all things affirmed and a decree will be entered accordingly against the complainant Davis-Watkins Manufacturing Company and the sureties on its bond for the writs of error and supersedeas. The costs of the writ of error will be adjudged against the complainant Davis-Watkins Manufacturing Company and its sureties.

Crownover and DeWitt, JJ., concur.